## HENRY POPPEN v. SIDNEY WADLEIGH.[1]

January 11, 1952.

Nos. 35,600, 35,624.

---

[1]Reported in 51 N. W. (2d) 75.

*S. H. Butz,* for plaintiff appellant.
*Dell & McCarten,* for defendant appellant.

CHRISTIANSON, JUSTICE.

This is an action for damages sustained by plaintiff as the result of his eviction from 65 acres of farm land leased from defendant. Defendant counterclaimed for the value of certain crops allegedly appropriated by plaintiff and for other damages. At the trial, the jury returned a verdict for plaintiff. Both parties appeal. Defendant appeals from the order denying his alternative motion for judgment notwithstanding the verdict or a new trial. Plaintiff appeals from an order denying his motion for judgment for treble damages.

Plaintiff is the owner of a farm in Douglas county adjacent to which are two tracts of land owned by defendant. The tracts are 30 and 35 acres in size. The 35-acre tract was leased by plaintiff for the 1950 farming season in the fall of 1949. The 30-acre tract was leased by plaintiff in the fall of 1948 for a three-year period and had been farmed by plaintiff during the 1949 farming season. Both tracts were rented on a share basis, with plaintiff receiving two-thirds of the resulting crop and defendant receiving, as rent, one-third of the crop.

In the fall of 1949, plaintiff spent two days harrowing the 35-acre tract in preparation for the following spring. In the spring of 1950, he returned again to harrow seven or eight acres of that tract, but

on finding that it was wet he turned to the 30-acre tract, which he partially harrowed. In May 1950, he began to seed the 30-acre tract and on the first day completed the seeding of nine acres with oats. On returning to the land two days later he discovered that "No Trespassing" signs had been erected preventing him from entering the land. Similar signs had also been posted by defendant on the 35-acre tract. Thereafter, defendant planted crops on both tracts, thus preventing fulfillment of the leasing agreement.

The reason defendant gave for his actions was that he did not receive from plaintiff his fair share of the crops grown on the 30-acre tract during the 1949 season, but this was disputed by plaintiff. It appears undisputed, however, that in February 1950 defendant orally informed plaintiff that he wanted to farm both tracts of land himself during the 1950 season; that plaintiff thereupon declared his intention to farm the land in conformance with the terms of their leasing agreement, but that no steps were taken by defendant to terminate the leases or evict plaintiff until the "No Trespassing" signs were posted in May of that year.

After being barred from entering the land, plaintiff instituted this action seeking to recover damages for the 1950 growing season and demanding that he be awarded treble damages under the provisions of M. S. A. 557.08. Since the issues raised on appeal are concerned only with plaintiff's damages, it is unnecessary to consider defendant's counterclaim.

The trial began in the district court on October 20, 1950. In order to prove his damages, plaintiff, after a sufficient foundation had been laid showing his farming experience and his knowledge of the 1950 crop season, was permitted to give his opinion as to the gross value of the crops he intended to plant on the leased land in 1950. He was also permitted to give his opinion as to his probable expense in growing the crops, including defendant's one-third share of the crop as rent. Thus, plaintiff was allowed to state his opinion as to the probable net profit he would have realized if he had been permitted to farm the land during the 1950 season. Following this testimony, three farmers owning and operating farms in the im-

mediate vicinity of the two tracts in question were called to testify. Each testified as to his past farming experience, the proximity of his farm to the two tracts in question, and the similarity of the soil of his farm to that of the two tracts. Thereafter, each was permitted to give his opinion as to the net profit that would have been realized from the two tracts for the farming season, assuming the usual good husbandry. They based their respective opinions upon plaintiff's testimony as to what he intended to plant, their general farming experience, including the methods and costs of production in this particular locality, and their knowledge of the land and the 1950 growing season, including the prices received for such crops during that season. Defendant objected to all the foregoing testimony on probable profits on the grounds that it was incompetent, irrelevant, and immaterial and not the proper measure of plaintiff's damages. In its charge, the trial court instructed the jury that the measure of plaintiff's damages would be—

"two-thirds of the reasonable value of the crop which he would have grown thereon less the reasonable value of seed, labor, use of machinery, cost of harvesting, and all other expenses necessary in planting, cultivating and harvesting the crop, including the plowing back of the thirty-acre tract."

The jury returned a verdict for plaintiff awarding him damages in the sum of $925. Thereafter, plaintiff moved for judgment in treble the amount of said verdict, contending that § 557.08 was applicable to the case. His motion was denied.

Defendant assigns as error the reception of the foregoing testimony as to the probable net profit plaintiff would have realized from the crops he intended to grow on the land during the 1950 season, and the trial court's instructions as to the measure of plaintiff's damages. Plaintiff on his appeal assigns as error the denial of his motion for treble damages. Thus, the two issues presented for determination are (1) the proper measure of plaintiff's damages, and (2) the applicability of § 557.08.

■ Defendant relies upon Glaubitz v. Meyer, 149 Minn. 161, 182 N. W. 1002, as controlling on the measure of plaintiff's damages.

In that case, the defendant had leased his farm to plaintiff on shares plus a cash rent. The lease ran from the fall of 1918 to the fall of 1921, but defendant refused to let plaintiff enter and occupy the farm when the time arrived for him to take possession. The action was tried in the fall of 1919, and recovery was sought by plaintiff for damages sustained from loss of use of the land for the three years covered by the lease. The trial court instructed the jury that the measure of plaintiff's damages was the difference between the stipulated rent and the increase in rental value occurring during the year from September 15, 1918, to September 15, 1919. This instruction was held erroneous, and the proper measure of damages was held to be the difference between the stipulated rental value and the increased rental value at the time of the breach.

If the Glaubitz case is controlling, then there must be a reversal in the instant case. In our opinion, the Glaubitz case is clearly distinguishable. First, the damages sought in the case at bar are for a season which had passed at the time of the trial. The damages sought in the Glaubitz case included two crop seasons yet to come. Also, in the Glaubitz case, the plaintiff was denied possession in the fall prior to the growing season. Here, plaintiff had possession, had begun farming operations, and was ejected after the growing season had commenced. Although the opinion in the Glaubitz case speaks of the uncertainty involved in determining future profits, the court was not called upon to consider the propriety of allowing future profits as a measure of damages in a case such as this. Rather, the problem there was that of determining the time at which an increase in rental value was to be measured.

The question here presented is one of first impression in this court. In attempting to find a correct measure of damages, our basic policy must be to compensate the person injured commensurate with his loss or injury—no more and no less. See, Hewson-Herzog Supply Co. v. Minnesota Brick Co. 55 Minn. 530, 534, 57 N. W. 129, 130. Defendant contends that the correct measure of plaintiff's damages is the difference between the stipulated rent and the increased rental value at the time of his eviction, namely, May 1950.

Such a measure of damages assumes in a case such as this that the evicted lessee could find comparable land to rent and that, if he did so, an award of the difference in rental values would fully compensate him. Here, plaintiff's ability to rent other land was greatly hampered by the fact that he was evicted in May and thus had a late start in seeking new land for the 1950 season. Furthermore, even assuming that plaintiff could rent another 65 acres elsewhere, he would not be fully compensated unless the land was of similar quality and in an area with similar growing conditions. Finally, the location of the two tracts was such that plaintiff would not be compensated unless the land were as conveniently located as the land lost through defendant's breach. Thus, to limit plaintiff's recovery to the difference in rental values would not make him whole; whereas, to measure his damages by the net profits he would have realized from the lease during the 1950 farming season would, in our opinion, be compensatory—no more and no less.

An unlawful eviction such as occurred here is a breach of contract. Pappas v. Stark, 123 Minn. 81, 142 N. W. 1046. Plaintiff was entitled to such damages as, at the time of the making of the contract, the parties could reasonably have contemplated would result from a breach. Hadley v. Baxendale, 9 Exch. (Welsby, Hurlstone & Gordon) 341; 2 Dunnell, Dig. & Supp. § 2559. Where, as here, agricultural lands are leased for crop purposes on a share basis, the parties must have contemplated that a total breach by the lessor after the growing season had commenced would result in a loss to the lessee of any profits that he otherwise would have realized from the crops to be grown that season.

The only objection to loss of profits as a measure of damages is the possibility that such a measure might be too uncertain of proof. 32 Am. Jur., Landlord and Tenant, § 266. The uncertainty referred to in the Glaubitz case is not present here. The crop season for which damages are sought was over at the time of the trial. The witnesses were particularly well qualified to give their opinion as to the profits which the two tracts would have earned. They owned

comparable farms, farmed under comparable conditions, and sold their crops in the same market. The witnesses were well informed as to the expenses of growing crops in that area. Where business tenants have been evicted from their places of business, we have not hesitated to grant damages for loss of future profits as a result of such an eviction. Sweeney v. Meyers, 199 Minn. 21, 270 N. W. 906; Pappas v. Stark, 123 Minn. 81, 142 N. W. 1046. The certainty of plaintiff's proof with respect to profits of a past growing season was as great or greater than the certainty in fixing business profits lost through an eviction from business premises. Furthermore, since the rent reserved was a share of the resulting crop, evidence as to the probable value of the 1950 crop would have been required to establish the stipulated rental value of the two tracts. Thus, the testimony objected to by defendant not only was admissible but was required under the measure of damages which he contends should have been adopted by the trial court.

We have considered the argument that the measure of damages applied in this case may encourage evicted lessees to falsely claim an intention to plant crops which subsequent events have shown to be profitable. However, since such testimony must first be accepted by a jury, and since the measure of damages contended for by defendant would not grant complete compensation, we feel amply justified in holding that loss of profits was a proper measure of damages in the instant case. Cf. Cross v. Ramdullah (9 Cir.) 274 F. 762; Avan v. Frey, 69 Ind. 91; Hoy v. Gronoble, 34 Pa. 9, 75 Am. D. 628; Haack v. Martin [1927] Can. S. C. 413, 3 Dom. L. R. 19, 15 British R. C. 559; see, Annotations, 104 A. L. R. 132, 161, and 53 L. R. A. 33, 104.

■ Plaintiff, on his appeal, assigns as error the trial court's denial of his motion for judgment in treble the amount found by the jury. The motion was based upon § 557.08, which provides:

"If a person who is put out of real property *in a forcible manner* without lawful authority, or who, being so put out, is afterwards kept out by force, shall recover damages therefor, judgment *may*

be entered for three times the amount at which the actual damages are assessed." (Italics supplied.)

Although these provisions were incorporated in the earliest laws of this state (R. S. [Terr.] 1851, c. 74, § 21), no prior decisions of this court have been found which are helpful in determining the applicability of § 557.08 to the particular facts of this case. However, the construction given by the New York court of appeals to a similar statute in that state (49 McKinney Laws N. Y., Real Property, § 535) has been quite persuasive.

We have recently held in Behrendt v. Rassmussen, 234 Minn. 97, 47 N. W. (2d) 779, that § 557.08 presupposes a good cause of action for damages caused by a forcible eviction before it can be applied. It seems clear from the language of the statute that the jury is to find single damages but that the court is left with the duty to treble them in a case which it deems proper. This is in accord with the New York practice. Hong Sing v. Wolf Fein, 33 Misc. 608, 67 N. Y. S. 1109. The trial court was of the opinion that this was not a proper case for application of the statute. We agree with this determination. Our inquiry need go no further than to consider the meaning of the expression "in a forcible manner" as used in the statute. These words have been construed by the New York courts on a number of occasions. For an eviction to warrant application of the statute, the New York courts have held:

"The force used must be unusual and tend to bring about a breach of the peace, such as an entry with a strong hand, or a multitude of people, or in a riotous manner, or with personal violence, or with threat and menace to life or limb, or under circumstances which would naturally inspire fear and lead one to apprehend danger of personal injury if he stood up in defense of his possession." Fults v. Munro, 202 N. Y. 34, 42, 95 N. E. 23, 26; Hallock v. N. Y. C. & H. R. R. Co. 202 N. Y. 201, 95 N. E. 644; Arout v. Azar, 219 App. Div. 260, 219 N. Y. S. 431.

Whatever may be the meaning of "forcible manner" in other contexts, in our opinion the foregoing construction is entirely con-

sistent with a statute granting a form of exemplary damages such as this. Here, defendant went upon the land in plaintiff's absence and merely posted "No Trespassing" signs. The eviction in this case obviously was not accompanied by such a degree of force as to require the application of § 557.08.

Since a proper measure of damages was applied by the trial court and the denial of plaintiff's motion for treble damages was fully justified by the record, the order denying the respective motions of the parties should be affirmed.

Affirmed.

