RAYGO, INC., Appellant, *v.* CREDLE EQUIPMENT, INC., Respondent.

Fourth Department, December 12, 1972.

*Herbert L. Warren* for appellant.

*Andrew S. Kowlaczyk* (*Earle C. Bastow* of counsel), for respondent.

MOULE, J.  Plaintiff and defendant entered into a contract in December, 1966 under which defendant was to handle distribution of plaintiff's vibration compaction equipment in certain counties of New York State.  The compactor was a new item and defendant expended considerable effort in introducing it to the trade.

On October 21, 1969, plaintiff mailed a proposed new distributor contract to defendant and requested that it be signed and returned.  Defendant did sign it and on October 24, 1969 returned it to plaintiff.  Plaintiff did not execute or send the defendant a copy of the contract, although defendant on December 5, 1969 wrote that it had not received a copy.  About January 21, 1970 at a distributors' convention in Chicago defendant's sales manager inquired of plaintiff's vice-president and sales manager why an executed copy of the 1969 contract which defendant had signed and returned to plaintiff had not been sent to defendant.  Defendant's sales manager testified that plaintiff's vice-president answered the question by telling him that " upon his return to

Minneapolis　*　*　*　he would sign the agreements and return them '' to defendant.

Notwithstanding the assurances given by plaintiff to defendant with reference to the contract the plaintiff on January 22, 1970 wrote defendant that it was designating L. B. Smith, Inc. as its New York State distributor and, on February 19, 1970 sent defendant a 30-day notice of termination of its distributorship contract. Both parties agreed that such notice was sufficient under the 1966 contract if it was in force. However, if the 1969 contract was in effect, such notice was not sufficient, as the contract provided for the mailing of a 30-day '' warning notice '' by the party initiating termination and also for a further '' notice of termination '' to be mailed no less than 30 days before the termination date, and that termination could not take effect sooner than 90 days after the mailing of the initial warning notice. No notice as provided for in the 1969 contract was ever sent by the plaintiff.

Defendant refused to make payment for certain equipment shipped by plaintiff who then instituted this action to recover the purchase price. Defendant asserted as a counterclaim its loss of prospective profits due to plaintiff's breach of either the 1966 or 1969 contracts, depending on which one the court found to be controlling. At the trial the court, after directing judgment in favor of plaintiff on its suit for the purchase price, submitted to the jury the question whether the 1966 or 1969 contract was in effect. The jury found that the 1969 contract was in effect and had been breached by the plaintiff and returned a verdict for the defendant awarding damages. The court permitted recovery by the defendant on the basis of a breach by the plaintiff but did not limit defendant's proof of damages to any period.

The parties tried the case under Minnesota law. Since plaintiff did not follow the termination procedure provided for in the 1969 contract, it consequently cannot claim the benefit of its termination clause which precluded recovery for prospective profits. The case law of Minnesota is clear that loss of prospective profits is a recoverable item of damages (*Hendrickson* v. *Grengs,* 237 Minn. 196; *Appliances, Inc.* v. *Queen Stove Works,* 228 Minn. 55; *Emerson* v. *Pacific Coast & Norway Packing Co.,* 96 Minn. 1).

Although plaintiff did not employ the termination procedures mandated by the 1969 contract, it did make clear its intent to terminate the contract in its letter of January 22, 1970 advising defendant of the appointment of the new distributor. The Min-

nesota courts have ruled in several instances, where contracts specified that they could be terminated a certain length of time after notice, that breach of the contract was sufficient notice of termination to cause the time period to begin running. (*Western Oil & Fuel Co.* v. *Kemp,* 245 F. 2d 633; *Matter of Petroleum Carriers Co.,* 121 F. Supp. 520.) In *Western Oil & Fuel Co.* v. *Kemp* (*supra,* pp. 641–642) the court held that: '' We construe Pappas v. Stark [123 Minn. 81] to mean that Minnesota follows the rule stated in 25 C. J. S., Damages, § 74, page 567 * * * ' Where a contract is terminable at any time on notice and it is terminated without notice, the damages which the aggrieved party may recover are limited to the notice period.' ''

The questions of whether the 1969 contract superseded the 1966 contract and, if so, whether the 1969 agreement was breached by plaintiff were fully and fairly tried, and the jury's verdict in the affirmative on both questions should not be disturbed, there being ample evidence to support it. Where a jury has reached a determination on matters within its sphere, its verdict should not be set aside unless it could not have been reached on any fair interpretation of the evidence (*Kimberly-Clark Corp.* v. *Power Auth. of State of N. Y.,* 35 A D 2d 330, 335; *Peterson* v. *Washington,* 34 A D 2d 967, 968).

There was, however, error in the determination of the amount of damages sustained, because the proof was not properly limited to the 90-day period from the initial warning of termination of January 22, 1970 as provided by the 1969 contract. Further, the court should not have unqualifiedly received proof of purchases by L. B. Smith, Inc. from plaintiff as there was neither indication that the equipment bought was to be sold during any given period, nor that Smith had not overstocked plaintiff's equipment. However, proof of all of defendant's past profits was properly excluded. The profit earned by defendant's entire operation included more than income derived solely from the sale or rental of plaintiff's equipment. In addition, defendant's previous profits from the sale of equipment, earned in the period when it was introducing and promoting plaintiff's equipment, would not indicate the probable more substantial profits to be earned after the line was established. Proof of L. B. Smith's sales as plaintiff's distributor was properly received in evidence, for although the L. B. Smith sales were made throughout a larger territory and it had a larger and better organized sales organization, the court restricted the jury's consideration to those sales made in defendant's territory. Justice will be best served by a retrial solely on the issue of damages, the verdict

on the issue of liability being sufficiently supported by the evidence (*Kane* v. *Bateman,* 28 A D 2d 814; CPLR 4404, subd. [a]).

The judgment should be reversed and a new trial granted solely on the question of damages.

GOLDMAN, P. J., MARSH and HENRY, JJ., concur.

Judgment unanimously reversed on the law and facts without costs and a new trial granted solely on the question of damages.